SAZERAC BRANDS, LLC,

        Plaintiff,               Case No. 2:24-cv-185

v.

CENTRAL STANDARD LLC,

        Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Sazerac Brands, LLC ("Sazerac" or "Plaintiff"), by and through its undersigned counsel, brings this action against Central Standard LLC ("Central Standard" or "Defendant") and alleges the following:

### INTRODUCTION & SUMMARY OF RELIEF REQUESTED

1. This case is about stopping willful trademark infringement and unfair competition in the marketplace by Central Standard. As set forth herein, Sazerac is a pioneer and industry leader in the American spirits market. Even before the turn of the 20th Century, Sazerac, its predecessors and affiliates have marketed and sold many different types and brands of spirits, including vodka and rum, among many others, in the United States. Since at least 2010, Sazerac has marketed and sold its espresso-flavored rum spirit called "GRIND." GRIND enjoys a stellar reputation, an enthusiastic following, and an extensive nationwide distribution across the United States, including in numerous retail locations throughout the state of Wisconsin. GRIND is a federally-registered trademark. The registration is incontestable.

2. More than a decade *after* Sazerac began using GRIND, Central Standard launched its DAILY GRIND coffee-flavored vodka into the U.S. marketplace. This unauthorized coexistence is likely to cause substantial amounts of confusion amongst the relevant consuming public for numerous reasons. *Both* parties' marks are highly similar in sound and appearance and

share the dominant element, GRIND. *Both* parties are selling spirits that are typically marketed and sold together or in close proximity. *Both* parties use the same liquor distribution network in Wisconsin. *Both* parties' products appear side-by-side on Wisconsin liquor distributors' websites. *Both* parties sell to the same types of retail outlets in Wisconsin. *Both* parties' products are sold in Wisconsin at Woodman's Market—one of the largest independent grocery chains in the state. Likely consumer confusion is simply a foregone conclusion.

3.     Central Standard was put on notice regarding its infringing conduct, but it has refused to cease its infringing use. Consequently, Sazerac has no choice but to initiate this action in order to protect its valuable rights in the GRIND trademark from further infringement and encroachment. Sazerac seeks recovery for violations of federal law and state common law. Sazerac will be requesting injunctive relief, damages, attorneys' fees and costs, and all other judicial or equitable relief available to it for being forced to file this action against an intransigent junior user that appears poised to continue its infringing ways.

## PARTIES

4.     Plaintiff Sazerac is a Delaware limited liability company with a principal place of business at 10101 Linn Station Road, Suite 400, Louisville, Kentucky 40223.

5.     On information and belief, Central Standard is a Wisconsin limited liability company with a principal place of business at 2330 W. Clybourn Street, Milwaukee, Wisconsin, 53233.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claims pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. §§ 1121(a), and Sections 1331 (federal question jurisdiction), 1338(a) (trademark infringement), and 1338(b) (unfair competition) of Title 28, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

7.     Supplemental jurisdiction is proper for the state law claim pursuant to Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a), because the claim is so related to the federal

claims that it forms part of the same case or controversy under Article III of the United States Constitution.

8.　　This Court has personal jurisdiction over Central Standard because it maintains its principal place of business in this state, has a substantial presence within this judicial district, and is advertising, distributing, and selling the infringing goods here.

9.　　Venue is proper pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Central Standard resides and is subject to personal jurisdiction with respect to this action in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. On information and belief, Central Standard advertises, distributes, and sells infringing products under the DAILY GRIND mark in this judicial district.

## FACTUAL BACKGROUND

### I.　Sazerac's Business and its Longstanding Use of the GRIND Brand

10.　　Sazerac is a wholly-owned subsidiary of Sazerac Company, Inc. ("Sazerac Company"). Sazerac owns the intellectual property, including trademarks, associated with Sazerac Company's alcoholic beverages, distilled spirits, and other products. Sazerac, including through Sazerac Company, its predecessors and affiliates, markets and sells different types of alcoholic beverages and distilled spirits, including vodkas, whiskeys, tequilas, gins, liqueurs, rums, and other spirits, under various brands.

11.　　Sazerac Company is a family-owned company that has been in business for over 227 years. Sazerac Company is one of the most successful alcoholic beverage companies in the world, having produced many spirits that are sold under well-known, highly-acclaimed, and famous brand names such as SOUTHERN COMFORT, BUFFALO TRACE, SAZERAC, GOLDSCHLAGER, MYERS'S, DR. MCGILLICUDDY'S, and FIREBALL, to name a few.

12.　　Since at least as early as 2010, Sazerac and its predecessors-in-interest have continuously marketed, sold, and distributed throughout the United States an espresso-infused rum liqueur under the trademark GRIND Espresso Shot (herein after "GRIND" or the "GRIND Mark"):



13.    As detailed on Sazerac.com, GRIND represents "a combination of medium-roasted Colombian arabica beans carefully blended with smooth Caribbean rum."[1]  Since its introduction into the marketplace, GRIND has garnered an extensive and enthusiastic following.  Consumers laud GRIND's many attributes such as its "flavor and the sweetness," "versatility," and "rich, full bodied" taste.

14.    Due to GRIND's popularity with consumers, GRIND is marketed, distributed, and sold extensively throughout the United States and within the state of Wisconsin.  GRIND is sold at all customary and usual places wherever alcoholic beverages are typically sold.  This includes sales at liquor stores and other retail outlets, as well as sales at bars, restaurants, and other locations where individual alcoholic drinks are sold and consumed.

15.    GRIND is marketed through websites and social media accounts maintained by Sazerac and its affiliates.  The websites include Sazerac.com and grindespressoshot.com.  True and correct copies of webpages and social media posts featuring GRIND are attached hereto as

---

[1] *See* Sazerac, Grind Liqueur, https://www.sazerac.com/our-brands/sazerac-brands/grind-rum-espresso.html (last accessed Feb. 7, 2023).

**Exhibit A.** Additionally, GRIND is also marketed and advertised extensively online by third-parties that sell GRIND to retail customers. For example, Top Shelf Wine and Spirits, Total Wine & More, and Badger Liquor are just some of the third parties that maintain active online listings for GRIND. GRIND is also advertised online by major national grocery store chains such as Kroger and Safeway. True and correct copies of just some of these third-party listings are attached hereto as **Exhibit B.**

16.     Sazerac owns the following trademark registration and application with respect to GRIND:

- GRIND, U.S. Reg. No. 3,897,820 (the "'820 Registration"), registered on December 28, 2010 for "alcoholic beverages except beers" in Class 33;

- U.S. App. No. 97/253,121 (the "'121 Application") filed February 4, 2022 for "alcoholic beverages except beer" in Class 33 and covering:[2]



Attached hereto as **Exhibit C** are printouts from the U.S. Patent and Trademark Office's Trademark Status & Document Retrieval (TSDR) system showing the current status of the '820 Registration and the '121 Application.

---

[2] Sazerac received a Notice of Allowance for Application No. 97/253,121 in July 2023 and expects the application to mature to registration in due course.

17.     The '820 Registration has achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

18.     In addition, through its continuous use of the GRIND Mark since at least 2010, Sazerac has significant common law rights in and to the GRIND Mark throughout the United States and all locations where the GRIND products are distributed and sold.

19.     Sazerac carefully controls the use of its GRIND Mark and is diligent in policing infringement by third parties.   As part of its monitoring and enforcement activities, Sazerac discovered Central Standard's Certificate of Label Approval ("COLA") filing with the U.S. Department of Treasury Alcohol and Tobacco Tax, and Trade Bureau, assigned COLA No. 22227001000889, for the label shown below.



## II.     Central Standard's Infringing DAILY GRIND Vodka

20.     Central Standard operates a distillery at its principal place of business at 2330 W. Clybourn Street in Milwaukee, WI.  According to its website, https://thecentralstandard.com/our-spirits, Central Standard distills a number of different types of spirits at that location including bourbon, whiskey, brandy, gin, and vodka.  At some point long after Sazerac began marketing, promoting, and selling GRIND in Wisconsin and elsewhere, Central Standard began marketing and selling its Daily Grind Coffee Flavored Vodka ("DAILY GRIND"), an image of which is shown below:



21.     After DAILY GRIND is distilled at the aforementioned location, Central Standard then places it into the stream of commerce.  Central Standard's DAILY GRIND is likely to cause massive confusion in the marketplace at every link in the distribution chain from distributors, to retailers, to consumers.

22.     For starters, the parties' marks look and sound similar.  The dominant portion of both marks is the capitalized word "GRIND."  The fonts are visually similar, and Central Standard even **bolds** its use of GRIND for good measure and to emphasize the term GRIND over the term DAILY:



23.     Central Standard markets its DAILY GRIND liquor on its website, as well as on various social media accounts and platforms.

24.     Additionally, the parties' products are in the same family: distilled spirits.  The parties' products are frequently marketed and sold to consumers by encouraging them to make the

same or similar type of beverage. For example, on social media and otherwise, Central Standard recently advertised its "Wis-presso Martini" made with DAILY GRIND:



25.    Similarly, a number of third parties advertise and promote Sazerac's GRIND as a central ingredient to create an espresso martini. For example, Top Shelf Wine & Spirits sells an espresso martini cocktail set featuring GRIND:



26.     On information and belief, Central Standard uses at least two third-party liquor distributors to widely distribute its DAILY GRIND Vodka to the consuming public in Wisconsin. Those liquor distributors are Badger Liquor and Frank Beverage Group.  Sazerac also uses both of those same distributors to distribute GRIND.  In fact, both DAILY GRIND and GRIND are prominently displayed side-by-side on those distributors' websites:





(Found at: https://www.badgerliquor.com/products/liquor/?_badger-region=north&search=grind)



(Found at: https://www.frankbeveragegroup.com/search/node/grind)

27.     Further, according to Badger Liquor's "product finder" on badgerliquor.com, Central Standard's infringing DAILY GRIND product is distributed to over 20 "bars and restaurants" and no fewer than nine grocery or liquor stores, all of these establishments located in the state of Wisconsin. Sazerac's GRIND product is also widely distributed to similar retail establishments in this state. According to Badger Liquor's "product finder," Woodman's Food Market—one of the largest independent supermarket chains in Wisconsin—carries *both* parties' products.

28.     Central Standard markets DAILY GRIND throughout Wisconsin as described above. Central Standard's website indicates that DAILY GRIND is also available and sold in Illinois.

29.     Central Standard has constructive notice that Sazerac owns the GRIND Mark because Sazerac uses the registration symbol ® in connection with the GRIND Mark when marketing GRIND products, and Sazerac owns an incontestable registration for the GRIND Mark.

30.     Before filing suit, Sazerac put Central Standard on actual notice that its DAILY GRIND mark was infringing and that it should cease and desist any further use. Regrettably, Central Standard has refused to do so.

31.     Likely confusion is simply a foregone conclusion by virtue of at least the following: (a) both parties' marks are highly similar in sound and appearance and share the dominant aspect: GRIND; (b) both parties are selling spirits that are typically marketed and sold together; (c) both parties use the same liquor distribution network in Wisconsin; (d) both parties' products appear side-by-side on the Wisconsin liquor distributors' websites; (e) both parties sell to the same types of retail outlets in Wisconsin; and (f) both parties' products are sold in Wisconsin at Woodman's Market.

## COUNT I

*(Trademark Infringement Under 15 U.S.C. § 1114)*

32.     Sazerac re-alleges and incorporates by reference the allegations in the proceeding paragraphs as if fully set forth herein.

33.     As described above, Sazerac owns the distinctive GRIND Mark in connection with alcoholic beverages, namely, rum.

34.     Sazerac's '820 Registration for GRIND is incontestable, valid, subsisting, in full force and effect, and Sazerac owns all right, title, and interest in the '820 Registration and the goodwill associated with the GRIND Mark.

35.     Sazerac's ownership and exclusive use in commerce of the GRIND Mark is superior to Central Standard's use of DAILY GRIND on its infringing product.

36.     Central Standard's use of the DAILY GRIND Mark in interstate commerce, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a) because it is without Sazerac's consent and is likely to cause confusion, to cause mistake, and to deceive consumers as to the origin or source of Central Standard's goods, and/or cause consumers to believe, mistakenly, that Central Standard and/or Central Standard's goods are part of or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with, Sazerac.

37.     Central Standard was, at all relevant times, both actually and constructively aware of Sazerac's prior use and registration of the GRIND Mark.  Central Standard's conduct is therefore willful.

38.     Further, Central Standard's promotion and offer for sale of products bearing the DAILY GRIND Mark will likely deceive and confuse consumers into believing that the DAILY GRIND products are produced, distributed, licensed, endorsed, or approved by or otherwise affiliated with Sazerac, when in fact, they are not.

39.     Central Standard has intentionally and knowingly infringed Sazerac's trademark rights and willfully intends to trade on the goodwill and reputation of Sazerac and its GRIND Mark.

40.     Upon information and belief, as a direct and proximate result of Central Standard's violations of 15 U.S.C. § 1114, Sazerac has been and will continue to be damaged in an amount determined at trial.

COMPLAINT

41. Further, as this is an exceptional case within the meaning of 15 U.S.C. § 1117(a) and involves the willful infringement of Sazerac's GRIND Mark as defined in 15 U.S.C. § 1117(b), damages should be trebled and attorneys' fees should be awarded.

42. Upon information and belief, Central Standard has realized, and continues to realize, revenue, profits, and other benefits as a result of its unlawful actions to the detriment of Sazerac.

43. Central Standard's conduct is causing and, unless restrained, will continue to cause Sazerac to suffer irreparable injury for which Sazerac has no adequate remedy at law.

## COUNT II

*(Federal False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a))*

44. Sazerac re-alleges and incorporates by reference the allegations in the proceeding paragraphs as if fully set forth herein.

45. As described above, Sazerac owns common law and federally registered rights in the GRIND Mark in connection with alcoholic beverages.

46. Sazerac's ownership and exclusive use in commerce of the common law and federally registered GRIND Mark is superior to and predates any use of DAILY GRIND by Central Standard.

47. Central Standard uses DAILY GRIND as a trademark in commerce in connection with the advertising, distribution, offering for sale, and/or sale of alcoholic beverage products.

48. Central Standard's use of the mark DAILY GRIND in interstate commerce, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a) because it is without Sazerac's consent and is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Central Standard's goods, and/or cause consumers to believe, mistakenly, that Central Standard and/or Central Standard's goods are part of, or sponsored, licensed, endorsed, approved by, or otherwise affiliated with, Sazerac.

COMPLAINT

49. Central Standard was at all relevant times both actually and constructively aware of Sazerac's prior use and registration of the GRIND Mark. Central Standard's conduct is, therefore, willful.

50. Central Standard has intentionally and knowingly infringed Sazerac's trademark rights and willfully intends to trade on the goodwill and reputation of Sazerac and its GRIND Mark.

51. Upon information and belief, as a direct and proximate result of Central Standard's violations of 15 U.S.C. § 1125(a), Sazerac has been and will continue to be damaged in an amount to be determined at trial.

52. Upon information and belief, Central Standard has realized, and continues to realize, revenue, profits, and other benefits as a result of its unlawful actions to the detriment of Sazerac.

53. Central Standard's conduct is causing and, unless restrained, will continue to cause Sazerac to suffer irreparable injury for which Sazerac has no adequate remedy at law.

## COUNT III

*(Trademark Infringement under Wisconsin Common Law)*

54. Sazerac re-alleges and incorporates by reference the allegations in the proceeding paragraphs as if fully set forth herein.

55. Central Standard's wrongful conduct, as alleged herein, constitutes trademark infringement prohibited by Wisconsin common law.

56. The GRIND Mark is distinctive and Sazerac has continuously used it since at least 2010 to identify and distinguish its GRIND products from those of competitors and Sazerac owns all right, title, and interest in the GRIND Mark.

57. Sazerac's ownership and exclusive use of the GRIND Mark is superior to Central Standard's use of DAILY GRIND on its infringing products.

COMPLAINT

13

58.     Central Standard subjectively, knowingly, and fraudulently used Sazerac's GRIND Mark to confuse and mislead consumers into believing its DAILY GRIND branded products are actually those of Sazerac.

59.     Central Standard's use of the DAILY GRIND Mark, as described above, constitutes trademark infringement under common law because it is without Sazerac's consent and is likely to cause confusion, to cause mistake, and to deceive consumers as to the origin or source of Central Standard's goods, and/or cause consumers to believe, mistakenly, that Central Standard and/or Central Standard's goods are part of or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with, Sazerac.

60.     Central Standard acted in willful, deliberate, and/or intentional disregard of Sazerac's rights.

61.     As a proximate result of Central Standard's wrongful conduct, Sazerac has been and will continue to be damaged in an amount to be determined at trial.

62.     Upon information and belief, Central Standard has realized, and continues to realize, revenue, profits, and other benefits as a result of its unlawful actions to the detriment of Sazerac.

63.     Central Standard's conduct is causing and, unless restrained, will continue to cause irreparable injury to Sazerac for which Sazerac has no adequate remedy at law.

<u>**COUNT IV**</u>

*(Unfair Competition under Wisconsin Common Law)*

64.     Sazerac re-alleges and incorporates by reference the allegations in the proceeding paragraphs as if fully set forth herein.

65.     Central Standard's wrongful conduct, as alleged herein, constitutes unfair competition prohibited by Wisconsin common law.

66.     The GRIND Mark is distinctive and Sazerac has continuously used it since at least 2010 to identify and distinguish its GRIND products from those of competitors and Sazerac owns all right, title, and interest in the GRIND Mark.

COMPLAINT

67.     Sazerac's ownership and exclusive use of the GRIND Mark is superior to Central Standard's use of DAILY GRIND on its infringing products.

68.     Central Standard subjectively, knowingly, and fraudulently used Sazerac's GRIND Mark to confuse and mislead consumers into believing its DAILY GRIND branded products were actually those of Sazerac.

69.     Central Standard's use of the DAILY GRIND Mark, as described above, constitutes trademark infringement under common law because it is without Sazerac's consent and is likely to cause confusion, to cause mistake, and to deceive consumers as to the origin or source of Central Standard's goods, and/or cause consumers to believe, mistakenly, that Central Standard and/or Central Standard's goods are part of or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with, Sazerac.

70.     Central Standard acted in willful, deliberate, and/or intentional disregard of Sazerac's rights.

71.     As a proximate result of Central Standard's wrongful conduct, Sazerac has been and will continue to be damaged in an amount to be determined at trial.

72.     Upon information and belief, Central Standard has realized, and continues to realize, revenue, profits, and other benefits as a result of its unlawful actions to the detriment of Sazerac.

73.     Central Standard's conduct is causing and, unless restrained, will continue to cause irreparable injury to Sazerac for which Sazerac has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Sazerac prays as follows:

A.     That the Court enter judgment in favor of Sazerac, including preliminary and permanent injunctive relief, on all claims for relief asserted in the Complaint;

B.     That the Court enter judgment determining that Central Standard's products infringed Sazerac's GRIND Mark in violation of 15 U.S.C. § 1114;

COMPLAINT

C. That the Court enter judgment determining that Central Standard infringed Sazerac's common law rights in the GRIND Mark and committed acts of unfair competition and false designation of origin under 15 U.S.C. § 1125(a);

D. That the Court enter judgment determining that Defendant committed trademark infringement and unfair competition under the common laws of the State of Wisconsin;

E. That the Court grant an injunction enjoining and restraining Central Standard, its officers, employees, agents, attorneys, and all persons acting by, through, or in concert with any of them, from:

       i. using the GRIND Mark and any confusingly similar mark, word, name or designation of a trademark, service mark, or trade name in a manner that is likely to cause consumer confusion pursuant to 15 U.S.C § 1116;

       ii. doing any other act likely to cause confusion or mistake or to deceive consumers into believing, mistakenly, that Defendant's goods are sponsored, licensed, endorsed, or approved by Sazerac, or are otherwise affiliated with Sazerac; and

       iii. unfairly competing with Sazerac.

F. That the Court issue an order directing Central Standard to file with the Court and serve on Sazerac within thirty (30) days after the service on Sazerac of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Central Standard has complied with the injunction;

G. That the Court award Sazerac its actual damages and Central Standard's profits resulting from the infringement of the GRIND Mark and/or Central Standard's unfair competition, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial;

H. That the Court award Sazerac its damages caused by Central Standard's common law trademark infringement and unfair competition in an amount to be established at trial;

I. That the Court declare this an exceptional case in light of Central Standard's knowing and willful infringement of the GRIND Mark;

J.     That the Court award Sazerac all costs, including attorneys' fees allowable by statute and/or other law, including 17 U.S.C. § 1117(a);

K.     That the Court order that all DAILY GRIND products marketed in violation of Sazerac's trademark rights in the GRIND Mark be destroyed or otherwise reasonably disposed of; and

L.     That the Court award Sazerac such other and further relief as this Court deems fair, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Sazerac Brands, LLC hereby demands a trial by jury on all issues so triable.

Dated:  February 9, 2024                      DORSEY & WHITNEY LLP


By:  */s/ J. Michael Keyes*
_____
J. Michael Keyes (29215)
keyes.mike@dorsey.com
Connor J. Hansen (55587)
hansen.connor@dorsey.com
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  (206) 903-8800
Facsimile:   (206) 903-8820

*Attorneys for Plaintiff*

COMPLAINT